UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM KADRIOSKI, #674133,

        Petitioner,

v.                                    CASE NO. 2:10-CV-14753
                                    HONORABLE PAUL D. BORMAN

HUGH WOLFENBARGER,

        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

Michigan prisoner Adam Kadrioski ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is being held in violation of his constitutional rights. Petitioner was convicted of first-degree felony murder, MICH. COMP. LAWS §750.316(1)(b), and armed robbery, MICH. COMP. LAWS §750.529, following a joint trial with separate juries with co-defendant Gordon Melling in the Oakland County Circuit Court. Petitioner was sentenced to life imprisonment without the possibility of parole on the murder conviction and a concurrent term of 15 to 30 years imprisonment on the robbery conviction in 2008. In his pleadings, Petitioner raises claims concerning the effectiveness of trial counsel and plain error arising from counsel's comments on the insanity defense. Respondent has filed an answer to the petition contending that it should be denied. For the reasons set forth, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and denies the petition. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

II.    **Facts and Procedural History**

Petitioner's convictions arise from the armed robbery of the Bozana Party Store in Rochester Hills, Michigan on November 2, 2006. The store owner, Cedomir Taseski, was killed during the incident after suffering blunt force head trauma and multiple stab wounds. The trial testimony revealed that Petitioner and co-defendant Gordon Melling were residents of a group home located near the store. Both men were observed standing in the alley near the store and looking into the store before the robbery. After the victim's wife left the premises, the men entered the store. When a nearby business owner attempted to enter the store a short time later, he found the door locked, looked inside, and saw both men in the store. He also saw Petitioner make a striking motion toward the ground. The witness could not get into the store and told two of his employees to call 911. One of those employees grabbed a steel bar from his truck and approached the store. When Petitioner and Melling exited the store, the business owner and his employee confronted them. Petitioner attempted to flee, but the men apprehended him. The men detained Petitioner and Melling until the police arrived. At the time of his arrest, Petitioner had blood on his hands and clothing.

Both Melling and Petitioner spoke to the police after being taken into custody. Video recordings and transcripts of their interviews were admitted into evidence. Melling and Petitioner both said that they planned the robbery to get money and that it was Petitioner's idea to commit the crime. Petitioner drew a diagram of the party store, asked Melling to take care of the old man in the back, and said that he would deal with the cashier by snapping her neck. Melling admitted taking money and other items from the store and said that he and Petitioner planned to split the proceeds evenly. Petitioner admitted pushing the victim down and hitting him with his fists and liquor bottles, but did not recall stabbing him. Petitioner acknowledged that he could have stabbed the victim with

2

broken glass. Petitioner also admitted taking money and liquor bottles from the store. Police recovered a diagram of the party store from Petitioner's bedroom at the group home.

Petitioner did not contest his involvement in the crime, but raised an insanity defense at trial. He presented testimony detailing his mental health history, which included suicide attempts, diagnoses of paranoid schizophrenia and bipolar disorder, and treatment with medications and electro-convulsive therapy. Two defense experts were of the opinion that he was legally insane at the time of the crime. In response, the prosecution presented two expert witnesses who were of the opinion that Petitioner was not legally insane at the time of the crime.

At the close of trial, the trial court instructed the jury on the elements of the charged offenses, the burden of proof, the insanity defense, and other relevant matters. In particular, the court instructed the jurors that the law excuses a person who is legally insane at the time of the crime, that they should not let possible penalty influence their decision, and that the lawyers' statements and arguments are not evidence and are only meant to help them understand the evidence and the parties' legal theories. Following deliberations, the jury found Petitioner guilty of felony murder and armed robbery. The trial court sentenced him to concurrent terms of life imprisonment and 15 to 30 years imprisonment on those convictions.

Petitioner subsequently filed a motion for evidentiary hearing or new trial with the trial court asserting that trial counsel was ineffective for improperly commenting on the effect of a not guilty by reason of insanity verdict and for failing to object to a jury instruction. The trial court determined that the claims lacked merit and denied the motion. *People v. Kadrioski*, No. 07-212657-FC (Oakland Co. Cir. Ct. Nov. 17, 2008).

Petitioner, through counsel, then filed an appeal of right with the Michigan Court of Appeals asserting that: (1) trial counsel was ineffective for improperly telling the jury that a not guilty by

3

reason of insanity verdict would mean that Petitioner would not be punished and would be "let go," and (2) alternatively, the trial court committed plain error by allowing trial counsel to make such statements to the jury. The court denied relief on both claims and affirmed Petitioner's convictions. *People v. Kadrioski*, No. 283571, 2009 WL 2515767 (Mich. Ct. App. Aug. 18, 2009) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Kadrioski*, 485 Mich. 900, 772 N.W.2d 385 (2009).

Petitioner subsequently filed a motion for relief from judgment with the trial court raising additional claims of ineffective assistance of trial counsel, prosecutorial misconduct, cumulative error, and ineffective assistance of appellate counsel. The trial court denied relief pursuant to Michigan Court Rule 6.508(D)(3). *People v. Kadrioski*, No. 07-212657-FC (Oakland Co. Cir. Ct. Sept. 15, 2010). Petitioner did not pursue an appeal of that decision in the state appellate courts.

Petitioner thereafter filed his federal habeas petition raising the same two claims presented to the state courts on direct appeal of his convictions. Respondent has filed an answer to the petition contending that it should be denied for lack of merit. Petitioner has filed a reply to that answer.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even

5

a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488,

6

493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## IV.   Discussion

### A.   Ineffective Assistance of Trial Counsel Claim

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for commenting on the effect of a not guilty by reason of insanity verdict during jury voir dire and opening and closing arguments. Specifically, Petitioner objects to the following remarks:

During jury voir dire:

And morally we're talking about hey you know if the guy might have done it why should we let him off if he was mentally ill and not – and doesn't know what he's doing, right?

Trial Tr., Vol. I, p. 142.

During opening statements:

We have decided in our society that the law will not punish people that are sick. That's what we decided. That's what not guilty by reason of insanity means. That if somebody has a mental [illness] and as a result of that mental illness doesn't appreciate the lawfulness of his conduct, can't – or can't conform his conduct in accordance with the law or doesn't know right from wrong he's held not criminally responsible.
* * *
And that's the distinction. You don't . . . punish people that are sick. You treat them differently.

Trial Tr., Vol. I, pp. 172-73, 179.

During closing arguments:

> And it's not an easy thing. I know that. That's not really an easy thing because people do not like the idea that the law give you that out. And I hate to use the word out. The law excuses the behavior. That's what the law does. It says that a person is responsible for their actions if in their right mind they commit a crime. But if they're not in their right mind and they're sick then the law doesn't hold them responsible because in this country we don't punish people that are sick.

Trial Tr., Vol, IV., pp. 180-81.

The United States Supreme Court has established a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be

8

2:10-cv-14753-PDB-RSW   Doc # 9   Filed 01/22/13   Pg 9 of 13   Pg ID 635

whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*. at 788.

Citing the *Strickland* standard, the Michigan Court of Appeals found that trial counsel's performance was not deficient and denied relief on this claim. The court explained in relevant part:

> . . . counsel in the present case responded to a juror's questions during voir dire with restraint and specifically deferred the issue of punishment to the court. In both his opening statement and his closing argument, he refrained from discussion of post-trial placement.

> Here, viewed in context, defense counsel's remarks were not intended as comments on defendant's possible disposition if the jury determined that defendant was insane. Indeed, when a juror raised this subject during voir dire, defense counsel expressly informed the juror that the jury is not permitted to consider possible penalty, punishment, or placement, and that he was not permitted to comment on that subject. In the challenged comments, defense counsel merely reinforced that it was an established facet of the law that an insane person is not legally or criminally responsible for his actions, and that there was a rational basis for distinguishing between an individual who was knowingly vicious and an individual who did not understand what he was doing because he was suffering from a mental illness. Defense counsel's conduct did not fall below an objective standard of reasonableness.

*Kadrioski*, 2009 WL 2515767 at *1-2.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. A review of the record reveals that counsel made efforts not to comment on Petitioner's post-verdict punishment or placement. During jury voir dire, for example, it is clear that trial counsel made reasonable efforts to discern potential jury bias against his client and the claimed insanity defense. Counsel specifically refrained from discussing possible punishment when questioning one juror in particular and explained that the issue of punishment is left to the trial court. *See* Trial Tr., Vol. I., pp. 55-56. Counsel also referred to Petitioner being found "not criminally responsible" or "not legally responsible" on numerous occasions. *See* Trial Tr., Vol. I, pp. 59, 62-63, 68, 80-81, 83, 91-92, 101, 108, 111, 116, 124, 154. Similarly, in opening and closing statements, counsel argued that Petitioner should not be held criminally responsible for his acts due to his mental health condition. During closing arguments, counsel discussed the definition of legal insanity and explained that if that standard is met, the person is "not legally responsible." *See* Trial Tr., Vol. I, p. 173, Vol. IV, p. 170, 180-81. While counsel on a few occasions used terms like "not punished" or "let off" in discussing the insanity defense, such instances were isolated and counsel accurately explained that the law excuses the behavior of people who are legally insane and does not hold them criminally or legally responsible. Counsel's conduct was reasonable under the circumstances.

Furthermore, even if trial counsel erred, Petitioner has not shown that he was prejudiced by counsel's conduct. The prosecution presented overwhelming evidence of Petitioner's planning and participation in the crime, including eyewitness testimony and Petitioner's own admissions. Petitioner's police interview reflects his plan and intent to commit the crime, his ability to communicate and respond to police questions, and his understanding of the wrongfulness of the crime. Additionally, while Petitioner presented evidence in support of his insanity defense, the

10

prosecution presented two experts who testified that Petitioner was not legally insane at the time of the crime. Given such evidence, it cannot be said that counsel's remarks prejudiced Petitioner. To be sure, any potential prejudice to Petitioner was mitigated by the trial court's jury instructions. The trial court instructed the jurors on the elements of the charged offenses and the insanity defense, cautioned them not to let possible penalty affect their verdict, and informed them that the attorneys comments were not evidence and that they should follow the law as instructed by the court. Jurors are presumed to follow a trial court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it."). Petitioner has not shown that he was prejudiced by counsel's remarks. He has thus failed to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

**B.     Plain Error Claim**

Petitioner alternatively asserts that he is entitled to habeas relief because the trial court committed plain error by allowing trial counsel to make the disputed statements. Petitioner cites state law in support of his claim.

The Michigan Court of Appeals denied relief on this claim, explaining that "because this alternate claim is based solely on the alleged improper comments by defense counsel, and defendant does not identify any alleged error independent of defense counsel's conduct . . . this issue is properly analyzed only within the framework for an ineffective assistance of counsel claim." *Kadrioski*, 2009 WL 2515767 at *1.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, to the extent that Petitioner asserts a violation of

11

state law, he fails to state a claim upon which relief may be granted. It is well-settled that alleged trial court errors in the application of state law are not cognizable as grounds for federal habeas relief. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Second, the state court was correct in ruling that challenges to defense counsel's conduct are to be considered as ineffective assistance of counsel claims. Petitioner fails to cite to any Supreme Court authority in support of his plain error argument and this Court has found none. He has thus failed to state a claim upon which federal habeas relief may be granted. Lastly, even assuming that Petitioner states a cognizable claim, he cannot demonstrate plain error given the Court's determination that he has not shown that trial counsel erred or that he was prejudiced by counsel's conduct. *See, e.g., Allen v. Harry*, No. 10-1304, 2012 WL 3711552, *9 (6th Cir. Aug. 29, 2012) (unpublished case explaining that the "plain error standard under Michigan law . . . is similar to the standard for *Strickland* prejudice). Habeas relief is not warranted on this claim.

## V.   Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and that the petition for a writ of habeas corpus must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this

standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his claims. A certificate of appealability is not warranted. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is DENIED and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED: 1-22-13

13